## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| THE HARFORD MUTUAL ) <br> INSURANCE COMPANIES, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> AGEAN, INC. dba PAPAS GRILL, ) <br> and JONATHAN BLITZ, on behalf of ) <br> himself and all others similarly ) <br> situated, ) <br> ) <br> Defendants. ) | **MEMORANDUM OPINION,** <br> **ORDER, AND RECOMMENDATION** <br><br> 1:09CV461 |

Plaintiff Harford Mutual Insurance Company ("Harford") filed this action on June 29, 2009. (docket no. 1.) Harford filed an amended complaint on December 3, 2010, after this court granted its motion to amend the complaint. (docket nos. 24 & 25.) Harford seeks a declaration of its rights and obligations under two insurance contracts it sold to Defendant Agean, Inc. ("Agean"). On August 11, 2009, Defendant Jonathan Blitz ("Blitz") answered and counterclaimed.[1] (docket no. 10.)

---

[1] Harford asserts that Blitz has no standing to argue whether Harford has a duty to defend or indemnify Agean in its reply in support of its Motion to Compel. (docket no. 42 at 3.) It is true that Blitz is neither the insured nor a beneficiary of the insured. Regardless, courts have still recognized that third parties such as Blitz have standing in similar disputes. The Fourth Circuit has stated, "A dispute between a liability insurer, its insured, and a third party with a tort claim against the insured over the extent of the insurer's responsibility for that claim is an 'actual controversy' . . ., even though the tort claimant has not yet reduced his claim against the insured to judgment." *Penn Am. Ins. Co. v. Valade*, 28 Fed. Appx. 253, 257 (4th Cir. 2002) (quoting *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 n.3 (4th Cir. 1994)).

Harford and Blitz disagree as to whether Harford has a duty to defend and indemnify Agean in the underlying action brought by Defendant Blitz and putative class members against Agean for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (2010) ("TCPA").

Harford and Blitz have each moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (docket nos. 32 & 44.) Harford seeks a declaration that it has no duty to defend or indemnify Agean in the underlying TCPA lawsuit. Blitz seeks a declaration that Harford does have a duty to defend and indemnify Agean in the underlying lawsuit. In addition, Harford moved to compel Blitz to respond to its first set of discovery requests. (docket no. 29.) For the following reasons, I will grant Harford's Motion to Compel. Furthermore, it will be recommended that the court grant Blitz's Motion for Judgment on the Pleadings as to the duty to defend issue, deny Harford's Motion for Judgment on the Pleadings as to the duty to defend issue, and dismiss without prejudice both Blitz's and Harford's Motions for Judgment on the Pleadings as to the duty to indemnify issue.

**BACKGROUND AND FACTS**

Blitz and other members of the proposed class filed the underlying suit against Agean in Durham County Superior Court. (Am. Compl. ¶ 7; Am. Compl. Ex. A.) The underlying complaint alleges that Agean sent Blitz and the other class members facsimile advertisements in violation of the TCPA between February 1, 2004, and

2

December 31, 2004. (Am. Compl. ¶ 9; Am. Compl. Ex. A ¶ 9.) After Blitz filed the underlying suit, Harford initiated this action to determine whether it has a duty to defend or indemnify Agean against the allegations in the underlying suit. (Am. Compl. ¶ 6.)

Agean purchased two general commercial liability policies from Harford, effective May 29, 2003, to May 29, 2004, and May 29, 2004, to May 29, 2005. (*Id.* ¶ 11.) Harford alleges that it has no duty to defend or indemnify Agean against the TCPA claims under the policies because any damages paid for these claims are neither "property damage" nor "advertising injury." (*Id.* ¶ 15.) Blitz, on the other hand, asserts that there is a duty both to defend and indemnify because TCPA damages are both covered "property damage" and "advertising injury." (docket no. 33 at 3–14.)

The general liability policy Harford sold to Agean provides coverage for various forms of business liability under Coverage A:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage", . . . or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages . . . .
>
> b. This insurance applies:
>
> > (1) To . . . "property damage" only if:
> > (a) The . . . "property damage" is caused by an "occurrence" that takes place in the "coverage territory" . . . .

3

>       (2) To:
>       . . . .
>       (b) "Advertising injury" caused by an offense committed in the course of advertising your goods, products, or services . . . .

(Am. Compl. Ex. B, pt. II, at 4.) The policy excludes from coverage "'property damage' expected or intended from the standpoint of the insured." (*Id.* at 5.) It also excludes "'[a]dvertising injury' arising out of: (1) Breach of contract, other than misappropriation of advertising ideas under an implied contract." (*Id.* at 8.) The policy provides the following definitions:

> 1. "Advertising injury" means injury arising out of one or more of the following offenses:
>
>       a.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>       b.  Oral or written publication of material that violates a person's right of privacy;
>       c.  Misappropriation of advertising ideas or style of doing business; or
>       d.  Infringement of copyright, title, or slogan.
> . . . .
>
> 12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
> . . . .
>
> 15. "Property damage" means:
>
>       a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of

>               use shall be deemed to occur at the time of the
>               physical injury that caused it; or
>       b.      Loss of the use of tangible property that is not
>               physically injured. All such loss of use shall be
>               deemed to occur at the time of the "occurrence" that
>               caused it.

(*Id.* at 11–13.) The policy does not define the terms "accident" or "right of privacy."

Alternatively, Harford seeks a declaration that it has a duty to indemnify Agean only for those underlying TCPA claims for which the recipient actually received an unwanted fax from the insured. (docket no. 45 at 12–16.) Harford also seeks a declaration that the insurance policies' "prior publication exclusion" precludes indemnification for faxes sent during the later policy period that were identical to faxes sent in the earlier policy period. (Am. Compl. ¶ 29.)

On December 10, 2010, Harford served its first set of discovery requests—interrogatories, requests for production of documents, and requests for admission—upon Blitz. (docket no. 30 at 2.) Blitz responded on January 10, 2011, by objecting to each request and refusing to produce anything substantive. (*Id.*) On January 13, 2011, Harford and Blitz engaged in a discovery conference to resolve the dispute pursuant to Local Rule 37.1(b). (*Id.*) The parties were unable to reach an agreement. (*Id.*) On January 18, 2011, Harford filed this motion to compel evidentiary responses to its discovery requests. (*Id.*)

**STANDARD OF REVIEW**

Harford and Blitz have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (docket no. 32 & 34.) A motion for judgment on the pleadings is determined by the same standard applied to a motion to dismiss for failure to state a claim. *See Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999). In ruling on a motion to dismiss for failure to state a claim, it must be recalled that the purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the action. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 887 F. Supp. 811, 813 (M.D.N.C. 1995). At this stage of the litigation, a plaintiff's well-pleaded allegations are taken as true; and the complaint, including all reasonable inferences therefrom, is liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996).

The duty of fair notice under Rule 8(a), however, requires the plaintiff to allege, at a minimum, the necessary facts and grounds that will support his right to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As the Supreme Court has instructed, although detailed facts are not required, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citation omitted). *See also Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)

(clarifying *Twombly*). With these principles in mind, the court now turns to the motions for judgment on the pleadings.

**DISCUSSION**

This court will first address the cross motions for judgment on the pleadings and then Harford's motion to compel.

<u>Harford's and Blitz's Motions for Judgment on the Pleadings</u>

This dispute centers around the interpretation of an insurance policy. Construction and application of insurance policy provisions is a question of law appropriate for summary disposition. *See Harleysville Mut. Ins. Co. v. Packer*, 60 F.3d 1116, 1121 (4th Cir. 1995) (citing *Wachovia Bank & Trust Co. v. Westchester Fire Insurance Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970)).

North Carolina courts have outlined several principles of construction that guide courts in construing insurance policies. *See Wachovia*, 276 N.C. at 354, 172 S.E.2d at 522. As in other contracts, the aim of construction of policy terms is to arrive at the intent of the parties when the policy was issued. *Id.* This intent "must be found in the language used by the parties to the [policy]." *Duke v. Mut. Life Ins. Co. of N.Y.*, 286 N.C. 244, 247, 210 S.E.2d 187, 189 (1974). "Where a policy defines a term, that definition is to be used. If no definition is given, nontechnical words are to be given their meaning in ordinary speech, unless the context clearly indicates another meaning was intended." *Woods v. Nationwide Mut. Ins. Co.*, 295

7

N.C. 500, 505-06, 246 S.E.2d 773, 777 (1978). Because the insurance company drafts the policy terms, any ambiguity as to their meaning "must be resolved in favor of the policyholder." *Wachovia*, 276 N.C. at 354, 172 S.E.2d at 522. Furthermore, in construing the provisions of an insurance policy, wherever possible the policy will be interpreted in a manner which gives, but never takes away, coverage. *Nationwide Mut. Fire Ins. Co. v. Allen*, 68 N.C. App. 184, 190, 314 S.E.2d 552, 555 (1984). Nevertheless, ambiguity does not exist solely because the insured and the insurer assert contrary constructions. *Wachovia*, 276 N.C. at 354, 172 S.E.2d at 522. An ambiguity will exist only if "in the opinion of the court, the language of the policy is fairly and reasonably susceptible to either of the constructions for which the parties contend." *Id.* (citation omitted).

An insurer's duty to defend the insured is broader than its obligation to indemnify the insured. *Waste Mgmt. of the Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 691, 340 S.E.2d 374, 377 (1986). "An insurer's duty to defend is ordinarily measured by the facts as alleged in the pleadings; its duty to pay is measured by the facts ultimately determined at trial." *Id.* Furthermore, where the allegations are arguably within the coverage of the policy, there is a corresponding duty to defend. *Id.* at 691 n.2, 340 S.E.2d at 377 n.2 ("[P]leadings that disclose a mere possibility that the insured is liable (and that the potential liability is covered) suffice to impose a duty to defend upon the insurer."). Thus, "[w]hen the pleadings state facts

8

demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable." *Id.* at 691, 340 S.E.2d at 377.

To determine whether the underlying state actions are covered by the provisions of the Harford policies, "the policy provisions must be analyzed, then compared with the events as alleged. . . . [t]he pleadings are read side-by-side with the policy to determine whether the events as alleged are covered or excluded." *Id.* at 693, 340 S.E.2d at 378. The arguments of the parties before the court must be assessed against these legal principles and canons of construction.

Blitz contends that Harford has a duty both to defend and indemnify Agean in the underlying lawsuit under the policies because TCPA damages are both covered "property damage" and "advertising injury." Harford, on the other hand, argues that it owes no duty to defend or indemnify Agean in the underlying lawsuit.

As a preliminary matter, I recommend that both motions for judgment on the pleadings be denied without prejudice as to the duty to indemnify issue. A court may decide this issue before the underlying action is resolved only in very limited circumstances, such as when the court can determine "that the allegations in the complaint could under no circumstances lead to a result which would trigger the duty to indemnify." *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001) (citations omitted); *see also Travelers Indem. Co. v. Miller Bldg. Corp.*,

221 Fed. Appx. 265, 267 (4th Cir. 2007) ("As a general practice, courts wait to decide coverage until litigation or agreement has determined the particular damage for which an insured will be responsible."). Harford's duty to indemnify will undoubtedly turn on factual findings in the underlying action given the factually intensive nature of the policy exclusions. Because this issue cannot be determined from the four-corners of Harford's Amended Complaint, the duty to indemnify issue is not ripe for adjudication. *Am. Nat'l Fire Ins. Co. v. M/V SEABOARD VICTORY*, No. 08-21811-CIV, 2009 WL 812024, at *1 (S.D. Fla. Mar. 17, 2009); *Miller Bldg.*, 221 Fed. Appx. at 267–68. Therefore, the only justiciable issue in the motions for judgment on the pleadings is whether Harford has a duty to defend.

A. *"Property Damage"*

The insurance policy at issue provides coverage for "'property damage' . . . caused by an 'occurrence' that takes place in the 'coverage territory.'" (Am. Compl. Ex. B, pt. II, at 4.) Among other things, "property damage" means "[p]hysical injury to tangible property, including all resulting loss of that property." (*Id.* at 13.) The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at 12.)

This court has previously held that the sending of unauthorized facsimile advertising constitutes property damage under nearly identical policy language in *Prime TV, LLC v. Travelers Insurance Co.*, 223 F. Supp. 2d 744, 750 (M.D.N.C.

10

2002). The court noted in *Prime TV* that the legislative history of the TCPA identifies two problems associated with unsolicited facsimile advertising:

> First, it shifts some of the costs of advertising from the sender to the recipient. Second, it occupies the recipient's facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk fax . . . . [T]he recipient assumes both the cost associated with the use of the facsimile machine, and the cost of the expensive paper used to print out facsimile messages.

*Id.* (quoting *Destination Ventures, Ltd. v. FCC*, 844 F. Supp. 632, 636 (D. Or. 1994) (quoting H.R. Rep. No. 102–317, at 5, *reprinted in* 14082 U.S. Congressional Serial Set, 102d Cong. 1st Sess. 10, 25 (1991), *aff'd*, 46 F.3d 54 (9th Cir. 1995)).

Harford contends that sending an unauthorized facsimile advertisement in violation of the TCPA is not an "occurrence" and thus not covered "property damage" under the policies. Recognizing that this court has already held that identical conduct was an "occurrence" in *Prime TV*, Harford claims the Fourth Circuit overruled *Prime TV* in *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631 (4th Cir. 2005). *Resource Bankshares*, however, did not overrule *Prime TV*. In *Resource Bankshares*, the Fourth Circuit analyzed an insurance contract under Virginia law. In *Prime TV*, this court construed a similar insurance policy under North Carolina law. *Resource Bankshares* and *Prime TV* are distinguishable because North Carolina and Virginia interpret the meaning of the term "accident" in insurance contracts differently.

North Carolina courts have interpreted "accident" in insurance contracts to include those situations in which the act would not have constituted an injury if the property owner consented. *York Indus. Ctr., Inc. v. Mich. Mut. Liab. Co.*, 271 N.C. 158, 155 S.E.2d 501 (1967). Virginia courts take a different approach. Rather than following *York*, Virginia courts define accidents by looking at "whether the incident or injury was a reasonably foreseeable result of the insured's actions." *Resource Bankshares*, 407 F.3d at 637. The Fourth Circuit noted In *Resource Bankshares* that in cases following *York*, "actions which are not necessarily injurious when consent exists can be an accident under insurance law when they are mistakenly performed on an *un*-consenting party." *Id.* at 638 (emphasis in original).

In jurisdictions following the *York* approach, including North Carolina, the accidental sending of advertisement facsimiles in violation of the TCPA is covered "property damage." It is accidental because the injury involved is not simply the act of using the fax recipient's materials (despite that result being foreseeable). If the sender has the recipient's consent, then there is no injury. The injury is using the recipient's materials without consent. Agean's alleged TCPA violations therefore satisfy the occurrence requirement and constitute property damage.

This divergence of Virginia and North Carolina law regarding the meaning of "accidental" in insurance policies makes the Fourth Circuit's holding in *Resource Bankshares* inapplicable to this case. Instead, *Prime TV* controls. Under *Prime TV*,

12

the alleged TCPA violations are covered "property damage"; thus, Harford has a duty to defend under the insurance policy it sold to Agean. Requiring Harford to defend is consistent with North Carolina's policy to broadly interpret insurance contracts to provide coverage whenever possible. *Nationwide Mut. Fire Ins. Co.*, 68 N.C. App. at 190, 314 S.E.2d at 555.

B. *"Advertising Injury"*

Harford also has a duty to defend Agean for the alleged TCPA violations under the "advertising injury" clause. The Harford-Agean insurance policies cover "'[a]dvertising injury' caused by an offense committed in the course of advertising your goods, products, or services." (Am. Compl. Ex. B, pt. II, at 4.) "Advertising injury" is defined to include "oral or written publication of material that violates a person's right of privacy . . . ." (*Id.* at 11.) In *Prime TV*, this court found that a nearly identical insurance policy also required coverage for the underlying TCPA claims under the "advertising injury" clause.[2] *Prime TV*, 223 F. Supp. 2d at 752–53. The court noted: "First, the [insured's] facsimiles were sent in the course of advertising [its] services. . . . Second, the [insured's] advertisements constitute 'advertising injury' as defined by the [insurer's] policies, that is a 'written publication of material that violates a person's right of privacy.'" *Id.* at 752.

---

[2] In its brief, Harford again argues that *Resource Bankshares* overruled *Prime TV*. As the court has already discussed, however, *Resource Bankshares* did not overrule *Prime TV*.

13

The TCPA was created, in part, to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile ([f]ax) machines and automatic dialers." *Int'l Sci. & Tech. Inst., Inc. v. Inacom Commc'ns, Inc.*, 106 F.3d 1146, 1150 (4th Cir. 1997) (quoting S. REP. NO. 102-178, at 1 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1968). The underlying TCPA claims involve an alleged written publication of material that violates a person's privacy right, constituting "advertising injury" as defined in the policy issued by Harford. Since this alleged conduct constitutes a covered "advertising injury," Harford has a duty to defend Agean in the underlying suit under this provision.

<u>Harford's Motion to Compel</u>

On January 18, 2011, Harford filed a motion to compel discovery responses to its first set of discovery requests sent to Blitz. (docket no. 29.) Harford also seeks payment of reasonable attorneys' fees incurred in support of this motion. (*Id.*) For the following reasons, this motion, including Harford's request for attorneys' fees, will be granted.

Federal Rules of Civil Procedure 26 through 37 govern discovery. The "rules of discovery are to be accorded broad and liberal construction." *Nester v. Poston*, 200 F.R.D. 268, 270 (W.D.N.C. 2001) (citing *Herbert v. Lando*, 441 U.S. 153, 177 (1979)). Limitations on discovery "are dictated 'only by relevance and

burdensomeness.'" *Ardrey v. United Parcel Serv.*, 798 F.2d 679, 684 (4th Cir. 1986) (quoting *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 343 (10th Cir. 1975)). A discovery request can be overly broad or unduly burdensome on its face, in which case the proponent of discovery bears the burden of establishing its relevance. *Hilt v. SFC Inc.*, 170 F.R.D. 182, 186 (D. Kan. 1997). Otherwise, a party resisting discovery must state its objection and set forth the reasons therefor with specificity. FED. R. CIV. P. 33(b)(4), 34(b), 36(a); *Coker v. Duke & Co.*, 177 F.R.D. 682, 686 (M.D. Ala. 1998). The use of objections without explanation is not tolerated and can result in a waiver of the objection or sanctions by the court. *PLX, Inc. v. Prosystems, Inc.*, 220 F.R.D. 291, 293 (N.D. W. Va. 2004); FED. R. CIV. P. 37. Furthermore, if the information requested is disclosed after a motion to compel is filed or granted, a court, after providing an opportunity to be heard, may award the party seeking discovery reasonable expenses incurred, including attorneys' fees. FED. R. CIV. P. 37(a)(5)(A).

Blitz objected in the same manner to all of Harford's discovery requests. The objections are based primarily on the contention that the only issue presently before the court is whether Harford has a duty to defend in the underlying action. Blitz's typical discovery response states:

> Blitz objects to the request because the only issue presently before this court is whether Plaintiff has a duty or obligation to defend Agean. Because it is well established [under] North Carolina law that the duty to defend is determined by comparing

15

> the allegations of the Complaint to the four corners of the insurance policy, any discovery attempting to "get behind" the allegations of the Complaint is prohibited and objected to. Without waiving said objections, see Plaintiff's First Amended Complaint, discovery is ongoing in the underlying action.

(Blitz Resp. to Harford's First Set of Inter. #1.) For the following reasons, this response is inadequate; and Harford's motion to compel is granted.

Harford's amended complaint raises two separate arguments relating to its duty to indemnify. First, there is an issue as to whether Harford must indemnify Agean absent proof of an actual receipt of a facsimile advertisement in violation of the TCPA. Second, the amended complaint raises an issue as to whether the prior publication exclusion bars coverage for identical faxes published during the second policy period. The discovery sought by Harford is relevant to these two issues from the amended complaint. Blitz cannot refuse to comply with discovery requests for this information on the grounds that Harford may not prevail on these issues at a later date. The issue in this context is not whether these claims are meritorious, but whether the requested discovery is relevant to these claims. While Blitz correctly asserts that it would be inappropriate for this court to currently decide on the duty to indemnify issue, that does not mean that he can refuse to comply with legitimate discovery requests. Harford's Motion to Compel is granted.[3]

---

[3] This court realizes that Blitz may not be able to produce this information for every member of the potential class. Blitz should still respond to the requests to the extent that he does have any such information and supplement when appropriate.

**CONCLUSION**

For the foregoing reasons, Harford's Motion to Compel (docket no. 29) is **GRANTED**. Furthermore, **IT IS RECOMMENDED** that the court **GRANT** Blitz's Motion for Judgment on the Pleadings as to the duty to defend (docket no. 32), **DENY WITHOUT PREJUDICE** Blitz's Motion for Judgment on the Pleadings as to the duty to indemnify (docket no. 32), **DENY** Harford's Motion for Judgment on the Pleadings as to the duty to defend (docket no. 44), and **DENY WITHOUT PREJUDICE** Harford's Motion for Judgment on the Pleadings as to the duty to indemnify (docket no. 44). Finally, Harford must, within ten days, submit a financial affidavit to the court detailing its reasonable attorneys' fees incurred in preparing the motion to compel. Blitz will then have five days to contest the amount of fees sought by Harford.

_____
WALLACE W. DIXON
United States Magistrate Judge

June 8, 2011